UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BETTY J. SUMMERLAND | ) |
| Plaintiff, | ) No. 19-cv- |
| vs. | ) Judge _____ |
| EXELON GENERATION COMPANY, d/b/a CONSTELLATION, a Delaware corporation, | ) Magistrate Judge _____ |
| Defendant. | ) **Jury Demanded** |

## COMPLAINT

Plaintiff by and through her legal counsel, Atty. Edward A. Voci, complains against the Defendants as follows:

### Jurisdiction and Venue

1. This action involves application of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.,* the Americans with Disabilities Act, 42 USC 12101 *et seq* and Title VII of the Civil Rights Act of 1964, 42 USC 2000e *et seq.* This court has jurisdiction of this action pursuant to 29 U.S.C. § 2617, 32 USC §12117(a), 42 USC 2000e-5(f)(3), and 28 U.S.C. § 1331.

2. The claims asserted in this action arose within this District. Venue of this action is proper pursuant to 29 U.S.C. § 2617 and 28 U.S.C. § 1391.

### Facts—Parties

3. Plaintiff BETTY J. SUMMERLAND is a citizen of the United States and resides within this District. At all times relevant hereto Plaintiff was employed by Defendant as an

Office Service Specialist in Defendant's Maintenance Department at its energy production facility in Braceville, Illinois.

4. Defendant EXELON GENERATION COMPANY is a corporation created and existing under the laws of the State of Delaware that conducts energy production business in this District under the name CONSTELLATION. At all times relevant hereto Defendant employed Plaintiff as an Office Service Specialist in Defendant's Maintenance Department at Defendant's Braidwood, Illinois power generation facility in Braceville, Illinois. Defendant employs in excess of 500 employees.

## Facts—Liabilities

5. Plaintiff has been employed by Defendant since August, 2011 first at Defendant's LaSalle Generating Station and then in 2013 promoted to Defendant's Braidwood, Illinois power generation facility. Defendant currently employs Plaintiff as an Office Service Specialist.

6. Plaintiff suffers from a combination of emotional health conditions: adjustment, anxiety, and depression disorders. These disorders periodically prevent Plaintiff from engaging in major life activities such as working, driving a car and leaving her home. The disorder also causes Plaintiff to suffer panic attacks that render her dysfunctional.

7. Plaintiff attempts to remedy her disorder through medication and through therapy provided by a professionally licensed health care provider to which provider she was referred by Defendant's Employee Assistance Program.

8. Defendant placed Plaintiff on medical leave from June 5, 2017 through August 28, 2017.

9. Plaintiff's health care treatment began in June, 2017 and continues to the present. The treatment has been beneficial for Plaintiff. Plaintiff's need to attend therapy treatment arises spontaneously and sporadically, often when she is at work. Plaintiff attempts not to miss work and will struggle to endure symptoms until she can get a quickly arranged therapy session.

10. For five years and until November 16, 2017 Plaintiff worked a 6:00a.m. to 2:30pm shift that allowed Plaintiff sufficient time to drive to and attend the last therapy time-slot offered by her health care provider located in Morris, Illinois.

11. On November 16, 2017 Defendant changed Plaintiff's work shift assignment to 7:00am to 3:30pm which prevented Plaintiff from timely driving to and attending her health care provider's last therapy time-slot of the day at 4:00p.m. On occasion and because of Plaintiff's acute emotional distress, Plaintiff's health care provider has allowed Plaintiff's therapy to begin at 4:30p.m., but doing so is contrary to the health care providers operating procedures and is unlikely to be allowed in the future.

12. Subsequent to the change in work hours and during November, 2017 Plaintiff attempted to negotiate with Defendant for a reasonable accommodation, namely, a work starting time the would allow her to timely attend therapy treatment. Defendant refused the accommodation and said refusal triggered one of Plaintiff's panic attacks which prevented her from working and necessitated her taking a vacation day to seek therapy and to relieve the symptoms of the attack.

13. At the direction of Defendant's Human Resources Department, on November 16, 2017 Plaintiff submitted a request to Defendant for family medical leave pursuant to the Family Medical Leave Act.

14. On November 20, 2017 Defendant approved Plaintiff's 11/16/17 FMLA absence request.

15. When Plaintiff called-in an FMLA absence on November 30, 2017, Defendant's Site Nurse stated to Plaintiff that Plaintiff's "badge was being pulled" and that Plaintiff would be referred to Defendant's Employee Assistance Program. As a result, Plaintiff's access to Defendant's work site was denied from November 30, 2017 through January 1, 2018. Plaintiff returned to work on January 2, 2018.

16. On December 19, 2017 Defendant's Medical Review Officer, and on December 20, 2017 Defendant's Site Nurse and staff from Defendant's Employee Assistance Program, contacted Plaintiff, during her FMLA absence, and informed Plaintiff that she was on "a last chance agreement." The Medical Review Officer, Site Nurse and EPA staffer stated that, if once more Plaintiff requested an FMLA absence due to Plaintiff's emotional disorder, Defendant would "deny your [Plaintiff's] access permanently." The Medical Review Officer stated to Plaintiff that Plaintiff should get control over her anxiety/depression, take preventative measures, that Plaintiff was untrustworthy and unreliable and that Plaintiff "did not work at Walmart."

17. Having Plaintiff's "badge pulled" would require Defendant's security personnel to deny Plaintiff entry into the workplace which denial is tantamount terminating Plaintiff' employment.

18. Defendant has approved FMLA absences for one Office Service Specialist employee and one management personnel employee in Defendant's Maintenance Department and has not threatened these employees with a "last chance agreement," termination or other adverse action.

19. Continuing after having been threatened with a "last chance agreement" Plaintiff has attempted to obtain therapy as best she can without requesting FMLA, a situation that has aggravated her emotional well-being and prevented her from obtaining therapy at times when it was needed.

20 . On August 17, 2018 one of Defendant's Maintenance Supervisors, who was aware of Plaintiff's "last chance" status, stated to Plaintiff that Defendant was aware that Plaintiff had been the only witness to alleged Title VII harassment violations in Defendant's Maintenance Department and that the Supervisor would "hate to see anything happen to you." Plaintiff interpreted this statement as a threat of adverse employment action given her "last chance" status.

21. Plaintiff has made several requests for a copy of Defendant's "last chance agreement," but Defendant has failed to provide her a copy of same. Plaintiff has opposed Defendant's "last chance agreement" policy and Defendant's application of it to Plaintiff.

22. Defendant committed the foregoing acts and omissions intentionally, willfully and maliciously to deprive Plaintiff of rights under the laws of the United States cited herein.

23. On November 5, 2018 Plaintiff filed her Complaint against Defendant with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging that Defendant discriminated against her because of her disability and that Defendant retaliated against Plaintiff.

24. On November 29, 2018 the EEOC issued and mailed to Plaintiff a "Right to Sue Letter" which Plaintiff received on or about December 2, 2018.

25. A copy of said "Right to Sue Letter" is attached hereto as Exhibit A.

**First Claim: FMLA—Discrimination—42 USC §2615-a-2**

26. - 50. Plaintiff re-alleges paragraphs 1 through 25 as if fully set forth in this First Claim.

51. Defendant has committed the acts and omissions alleged herein in violation of the Family Medical Leave Act, USC § 2615-a-2.

### Second Claim: FMLA—Retaliation—42 USC §2615s-a-1

52. - 74. Plaintiff re-alleges paragraphs 1 through 22 as if fully set forth in this Second Claim.

75. Defendant has committed the acts and omissions alleged herein because Plaintiff requested and took absences from work pursuant to the FMLA which acts and omissions violated 42 USC §2615-a-1

### Third Claim: Civil Rights Acts of 1964—Retaliation—42 USC §2000e-3-a]

76. - 100. Plaintiff re-alleges paragraphs 1 through 25 as if fully set forth in this Third Claim.

77. Defendant has committed the acts and omissions alleged herein because Plaintiff was a witness to Title VII violations committed in Defendant's Maintenance Department which acts and omissions violated 42 USC §2000-3-a.

### Fourth Claim: ADA— Discrimination—42 §12115-a-2

78. - 103. Plaintiff re-alleges paragraphs 1 through 25 as if fully set forth in this Fourth Claim.

79. Defendant has denied Plaintiff's request for a reasonable accommodation as alleged above which denial violated the ADA, 42 USC §12115-a-2.

### Fifth Claim: ADA—Retaliation— 42 USC §12203-a

80. - 104. Plaintiff re-alleges paragraphs 1 through 25 as if fully set forth in this Fifth Claim.

105. Defendant has committed the acts and omissions alleged herein because Plaintiff requested a reasonable accommodation which acts and omission violated 42 USC §12203-a.

**Sixth Claim: ADA—Interference, Coercion or Intimidation— 42 USC §12203-b**

106. - 131. Plaintiff re-alleges paragraphs 1-25 as if fully set forth in this Sixth Claim.

132. Defendant has committed the acts and omissions alleged herein for the purposes of interfering with Plaintiff's requesting her reasonable accommodation, coercing Plaintiff to refrain from requesting her reasonable accommodation, and to intimidate Plaintiff from making her request for a reasonable accommodation which acts and omissions violated the 42 USC §12203-b.

**Remedies Requested**

Accordingly, Plaintiff requests the following relief:

A. Trial by jury on liability and entry of judgment on the jury finding;

B. Trial by jury on compensatory and punitive damages and entry of judgment on the jury verdict;

C. Trial by the Court on equitable remedies and the entry of the following pursuant to FRCP 65: (i) temporary restraining order and preliminary injunction maintaining the *status quo ante* prohibiting Defendant from taking any adverse action against Plaintiff and from interfering in her exercising her rights under the FMLA and Title VII; (ii) waiving any security or bond; and (iii) permanently mandating Defendant from taking any adverse action

against Plaintiff and from interfering in her exercising her rights under the FMLA and Title VII;

    D. The costs of this action;

    E. Trial by the court on the issue of prevailing party attorney fees and entry of judgment awarding Plaintiffs their attorney fees.


/s/ *Edward A. Voci*
Atty. Edward A. Voci
624 Lathrop Avenue
River Forest, Illinois 60306
tel. 708-256-8624
vocilaw@mac.com
ARDC 2905922
COUNSEL FOR PLAINTIFF